**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA BURKHEAD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 8193 |
| | ) | |
| v. | ) | |
| | ) | Judge Martha M. Pacold |
| COOK COUNTY ADULT PROBATION, | ) | |
| DEPARTMENT[1] and OFFICE OF THE | ) | |
| CHIEF JUDGE OF THE CIRCUIT | ) | |
| COURT OF COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, OFFICE OF THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY ("Defendant" or "OCJ"), by and through its attorney, Kwame Raoul, Attorney General for the State of Illinois, submits this Memorandum of Law in support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a).

## I.    INTRODUCTION

Plaintiff Maria Burkhead ("Plaintiff"), an Administrative Assistant I employed in Defendant's Adult Probation Department ("APD"), was temporarily assigned four times due to staffing needs within the department and was not selected for four promotions since her employment began in May 2015. Def. Rule 56.1 Statement of Uncontested Facts in Supp. of its Mot. for Summ. J. ¶¶ 9, 12, 15, 18, 23, 27, 29, 32, and 33, [hereinafter Def.'s SOF].

**A.    Plaintiff's Employment History with OCJ.** Plaintiff was hired in May 2015 as an Administrative Assistant I and was assigned to the Training Division within APD. *Id.* ¶ 4. Plaintiff

---

[1] This Court granted Plaintiff's oral motion to voluntarily dismiss Defendant Cook County Adult Probation Department on March 4, 2020. ECF No. 14.

is a member of AFSCME Local 3696. *Id*. ¶ 4. During her time in the Training Division, Plaintiff participated in training. *Id*. ¶ 8. However, Plaintiff never took training specifically assigned to or designed for Probation Officers. *Id*. ¶ 8. In August 2016, Plaintiff requested a transfer and was temporarily assigned to the Office of Human Resources. *Id.* ¶ 9.

In October 2016, there was a back log in data entry caused by retirements in the Problem Solving Courts. *Id*. ¶ 11. On October 31, 2016, Plaintiff was temporarily assigned to assist in the Problem Solving Courts. *Id.* ¶ 12. In September 2017, there was a need for someone to perform the duties of a PSI Typist at the Access Database for Specialty Courts. *Id*. ¶ 14. On September 11, 2017, Plaintiff was temporarily assigned to the Access Database for Specialty Courts. *Id.* ¶ 15. In December 2019, there was a need for someone to perform support staff duties in the Community Service Unit due to the retirement of the employee performing those duties. *Id*. ¶ 17. On December 17, 2019, Plaintiff was temporarily assigned to the Community Service Unit. *Id.* ¶ 18.

Plaintiff's pay did not increase or decrease as a result of any of these temporary assignments. *Id*. ¶ 20. Plaintiff was the least senior Administrative Assistant I at the time of each of her temporarily assignments. *Id.* ¶¶ 10, 13, 16, and 19. No grievance was filed contesting Defendant's authority to make any of the temporary assignments under the seniority or management rights provisions of the applicable collective bargaining agreements. *Id*. ¶ 21.

### B. Plaintiff's Applications for Promotions.

On December 7, 2016, Plaintiff applied for the Human Resources Assistant I position. *Id.* ¶ 23. Director of Human Resources Noreen Larson and Assistant Director of Human Resources Michael Rohan interviewed Plaintiff for this job. *Id.* ¶ 24. ███████████ was hired for this position. *Id.* ¶ 25. Larson and Rohan hired █████████ because she had outstanding qualifications. *Id.* ¶ 26. Hill-███████████████████████

████████████████████████████████████████████. *Id*. ¶ 26.

On January 26, 2017, Plaintiff applied for the Interstate Compact Coordinator ("ICC") position. *Id.* ¶ 27. ████████████ was assigned to the ICC position as part of a settlement with the Teamsters Local 700 Union. *Id.* ¶ 28. On September 4, 2018, Plaintiff applied for the Administrative Assistant to the Chief Probation Officer position. *Id.* ¶ 29. Chief Probation Officer Thomas Lyons interviewed Plaintiff for the position. *Id.* ¶ 30. Lyons chose ████████████ for this position. *Id.* ¶ 31. Lyons chose ████████ because ████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* ¶ 31. As a result, Lyons believed ████████ was the most qualified applicant. *Id.* ¶ 31.

On February 24, 2017, Plaintiff interviewed for an Adult Probation Officer position. *Id.* ¶ 32. Defendant keeps applications and interviews for Adult Probation Officer positions on file for 2 years and uses them when hiring new Adult Probation Officers. *Id.* ¶ 32. On November 19, 2019, Plaintiff interviewed for an Adult Probation Officer position. *Id.* ¶ 33. APD uses a panel of 2 to 4 interviewers to conduct interviews for Probation Officer positions. The interviewers score the candidates on a scale of 1-5 in 6 categories, provide an overall rating, and state whether the applicant is recommended for hire. *Id.* ¶ 34. Even if a candidate is recommended for hire by one or more members of the panel, that does not mean that candidate will be hired as an Adult Probation Officer. *Id.* ¶ 36. After all interviews are complete, the panel meets with the Chief Probation Officer and decides which recommended candidates to hire. *Id.* ¶ 35. Plaintiff was not recommended for hire after her 2017 or 2019 interviews. *Id.* ¶ 47. Therefore, the Chief Probation Officer did not consider her for hire as an Adult Probation Officer.

Defendant hired 18 Adult Probation Officers in 2018 and 2019. *Id.* ¶ 48. All employees

hired as Adult Probation Officers had distinguishing factors such as relevant education (such as a master's degree), prior work experience in the field (often as a probation, correctional, or peace officer), or language skills. *Id.* ¶ 48. ██████████████████████████

████████████████████████ all had master's degrees. *Id.* ¶ 49.

███████████████████████████████████████

███████████████████████████████████████

████████████████ all had prior work experience in the field. *Id.* ¶ 50. ████

████████████████ all had bilingual language skills. *Id.* ¶ 51.

**C. Plaintiff's Complaints and Defendant's Investigations.**

On November 21, 2016, Plaintiff sent a letter to Chief Probation Officer Lavone Haywood regarding the behavior of ████. *Id.* ¶ 52. Haywood conducted an investigation into Plaintiff's claims. *Id.* ¶ 53. On December 13, 2016, Haywood and Larson met with Plaintiff to discuss her claims about ████ behavior. *Id.* ¶ 53. During this meeting, Plaintiff provided a list of witnesses who she believed would corroborate her claims. *Id.* ¶ 53. Haywood and Larson interviewed all of Plaintiff's witnesses but no one corroborated Plaintiff's claims. *Id.* ¶ 54. In fact, Plaintiff's witnesses stated that they thought Plaintiff was the aggressor towards ████ *Id.* ¶ 54.

On November 3, 2017, Plaintiff sent a letter to OCJ Human Resources Director Laura Kelly ("Kelly") and OCJ Labor and Employment Relations Counsel Katherine Verrant ("Verrant") in the OCJ Human Resources Department. *Id.* ¶ 55. In response to Plaintiff's letter, Verrant conducted an investigation. *Id.* ¶ 56. She reviewed documents Plaintiff submitted and interviewed Plaintiff, O'Dell, Larson, ████████████████████████████

███████████████████████████████████████

████████████████. *Id.* ¶ 56. Verrant interviewed ████████████████

4

███████ at Plaintiff's request. *Id.* ¶ 57. On April 23, 2018, Verrant sent a letter to Kelly with the findings of her investigation. *Id.* ¶ 57. Verrant was unable to corroborate any of Plaintiff's claims against O'Dell, Larson, or Haywood. *Id.* ¶ 57.

### D. OCJ Policies.

Plaintiff is a board member on Defendant's Policies and Procedures Committee and is familiar with all APD policies. *Id.* ¶ 58. APD Code of Conduct 2.06 (11) states an employee must "[n]otify his/her chain of command or the Office of Human Resources as soon as practicable, if arrested, indicted or convicted of a felony, or misdemeanor including felony or misdemeanor traffic offense(s)." *Id.* ¶ 59.

Plaintiff is also familiar with the collective bargaining agreements ("CBAs") between the Chief Judge of the Circuit Court of Cook County and AFSCME Council 31, Local 3696. *Id.* ¶ 58. Article IV of the AFSCME Local 3696 collective bargaining agreements establish rules for employee seniority. *Id.* ¶ 60. Article IV, Section 2 of the AFSCME Local 3696 collective bargaining agreements states: "For full-time employees, seniority is an employee's length of most recent continuous employment in the office since his/her last hiring date less any time off for a period exceeding 30 calendar days." *Id.* ¶ 61.

Article IV, Section 3 of the AFSCME Local 3696 collective bargaining agreements states:

> On December 1st and June 1st of each year, the Employer will furnish the Union a list showing the name, number, address, classification and last hiring date of each employee. The APD Office of Human Resources maintains a seniority list for all employees in the job title of Administrative Assistant I.

*Id.* ¶ 62.

The APD Office of Human Resources maintains a seniority list for all employees in the job title of Administrative Assistant I that are regularly provided to the union. *Id.* ¶ 63. Article II, Section 1(e) of the collective bargaining agreements between AFSCME Council 31, Local 3696

grants Defendant the authority to "hire, assign and lay off employees, to reduce the work week or the work day." *Id*. ¶ 64. Article II, Section 1(l) of both applicable CBAs grants the employer authority to "transfer, promote, and demote employees from one certification or department to another." *Id*. ¶ 65. When an operational need arises, APD can temporarily assign an employee to fill that need. *Id*. ¶ 66. The Deputy Chief of Assistant Chief in charge of the Unit informs the APD Office of Human Resources of a need. *Id*. ¶ 67. The APD Office of Human Resources assigns the least senior employee in the position. *Id*. ¶ 67. The least senior employee is determined by consulting the seniority list. *Id*. ¶ 68. These lists include all employees in the AFSCME Local 3696 bargaining unit which is made up of employees in many job titles. *Id*. ¶ 68. As Director of the Office of Human Resources, Larson does not identify operational needs herself. *Id*. ¶ 69. Rather, she receives requests from Deputy Chiefs and Assistant Chiefs and makes sure that the correct employee is temporarily assigned according to the seniority rules of CBA. *Id*. ¶ 69.

An employee in the job title of Electronic Monitoring Tech could not be temporarily assigned because the Electronic Monitoring Department needs to be fully staffed at all times. *Id*. ¶ 70. Electronic Monitoring Technicians make up a unit that works 24 hours a day on every day of the year and requires specialized training. *Id*. ¶ 71. Due to the nature of the position and the training required to perform the position, Electronic Monitoring Technicians cannot be removed from their electronic monitoring duties. *Id*. ¶ 72.

### E. Plaintiff's Relevant Disciplinary History.

On April 4, 2019, Plaintiff was arrested for domestic battery. *Id.* ¶ 73. Plaintiff did not notify anybody in her chain of command or anybody in the APD Human Resources Office of her arrest. *Id.* ¶ 73. On July 30, 2019, Chief Probation Officer Thomas Lyons suspended Plaintiff for 3 days for violating the Code of Conduct 2.06. *Id.* ¶ 74.

F.      **Procedural History.**

On October 19, 2016, Plaintiff filed a charge of discrimination against the Cook County Adult Probation Department with the Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of her race, sex, national origin, age, and retaliation by subjecting her to different terms and conditions of employment. *Id.* ¶ 75. In her charge, Plaintiff alleges Defendant discriminated against her by subjecting her to different terms and conditions of employment, including a hostile work environment. *Id.* ¶ 76.

On December 10, 2018, Plaintiff filed a charge of discrimination against the Cook County Adult Probation Department with the EEOC alleging discrimination on the basis of her race, national origin, and retaliation. *Id.* ¶ 77. In her charge, Plaintiff alleges Defendant discriminated against her by involuntarily transferring her and refusing to promote her. *Id.* ¶ 78.

On December 16, 2019, Plaintiff initiated this action against Defendant. ECF No. 1. Plaintiff alleges that Defendant discriminated against her on the basis of her race and/or national origin by denying her promotions and transferring her to temporary assignments. *Id*. Plaintiff also alleges that Defendant retaliated against her for engaging in protected activity by denying her promotions and transferring her to temporary assignments. *Id.*

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Porter v. City of Chi.*, 700 F.3d 944, 950 (7th Cir. 2012). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242,248 (1986)). Summary judgment must be granted if the nonmoving party is "unable to 'establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Benuzzi v. Bd. of Educ. of Chi.*, 647 F.3d 652, 662 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III.   ARGUMENT

### A.  Summary Judgment Should be Entered on Plaintiff's Involuntary Transfer Claims.

Under Title VII, it is not "an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system." 42 U.S.C. 2000e-2(h); *International Broth. of Teamsters v. US*, 431 U.S. 324 (1977). As the Supreme Court explained, "the unmistakable purpose of § 703(h) was to make clear that the routine application of a bona fide seniority system would not be unlawful under Title VII." *International Broth. of Teamsters*. at 352. Here, it must be noted that what Plaintiff calls "involuntary transfers" were actually temporary assignments. Defendant makes temporary assignments based upon its operational needs pursuant to a bona fide seniority system as codified by the applicable collective bargaining agreements. Def.'s SOF at ¶¶ 60-69. Every time Defendant temporarily assigned Plaintiff, she was the least senior employee in the job title of Administrative Assistant I. *Id*. at ¶¶ 10, 13, 16, and 19. Significantly, there were no grievances filed challenging any of Plaintiff's temporary assignments on the basis that they violated the seniority system of the collective bargaining agreements. *Id*. at ¶ 21. Thus, none of Plaintiff's temporary assignments violate Title VII by the plain terms of the statute and longstanding precedent. Accordingly, summary judgment should be granted in favor of Defendant.

### 1. *Plaintiff was Not Discriminated Against Based Upon her Race or National Origin*.

Even if Plaintiff can establish that her temporary assignments were not made pursuant to a bona fide seniority system, she still cannot show that she was discriminated against based upon her race or national origin. To survive summary judgment, Plaintiff must adduce evidence that "would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). To establish a prima facie case of discrimination, a plaintiff must show that: "(1) she is a member of a protected class; (2) she met [the employer's] legitimate job expectations; (3) she suffered an adverse employment action; and (4) another similarly situated employee not in the protected class was treated more favorably." *McKinney v. Office of Sheriff of Whitley Cnty*, 866 F.3d 803, 807 (7th Cir. 2017).

### a. <u>*Plaintiff's Temporary Assignments Were Not Adverse Employment Actions.*</u>

Plaintiff claims that she was temporarily assigned due to her race and national origin fail because she cannot show that she suffered a materially adverse employment action. *McCurry v. Kenco*, 942 F.3d 783, 788 (7th Cir. 2019). Plaintiff has the burden to show "some quantitative or qualitative change in the terms and conditions of the [plaintiff's] employment that is more than a mere subjective preference." *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). A change that "does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.*, 85 F.2d 270, 274 (7th Cir. 1996). Not everything that makes an employee unhappy constitutes an adverse employment action. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007).

Plaintiff complains that she was temporarily assigned on four occasions over five years of

her employment with Defendant. DSOF ¶¶ 9, 12, 15, and 18.  First, she was temporarily assigned from the Training Division to the Office of Human Resources, then temporarily assigned to assist at the Problem Solving Courts, next temporarily assigned to assist with the Access Database for the Specialty Courts, and finally temporarily assigned to work in the Community Service Unit. *Id.* ¶¶ 9, 12, 15, and 18.  None of these temporary assignments resulted in a reduction in pay or a change significant enough to constitute an adverse employment action. *Id.* ¶ 20. Plaintiff remained in the job title of Administrative Assistant I and changed locations to perform support staff work when there was an operational need for assistance. No reasonable jury could find that these assignments were a change significant enough to be considered an adverse employment action.

### b. *Plaintiff Cannot Identify a Similarly Situated Comparator.*

Additionally, Plaintiff's claim must fail because she cannot identify a similarly situated employee who was treated more favorably. To survive summary judgment "by showing differential treatment of a similarly situated employee, a plaintiff must identify a comparator who is 'directly comparable to [her] in all material respects.'" *Williams v. Office of Chief Judge of Cook Cnty. Ill.*, 839 F.3d 617, 626 (7th Cir. 2016) (quoting *Perez v. Thortons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013)).

Here, Plaintiff cannot identify a similarly situated employee because there is no other employee in the job title of Administrative Assistant I with less seniority than her. Def.'s SOF ¶¶ 10, 13, 16, and 19. Three of the four temporary assignments Plaintiff complains about were temporary assignments made solely based on seniority. *Id.* ¶¶ 13, 16, and 19. The other temporary assignment, to Human Resources, was made at Plaintiff's request. *Id.* ¶ 10. At all times, Plaintiff was the least senior employee in the job title of Administrative Assistant I. *Id.* ¶¶ 10, 13, 16, and 19. Significantly, Plaintiff cannot point to another employee in the job title of Administrative

Assistant I who had the least seniority but was not temporarily assigned to when an operational need arose. The lack of a comparator is fatal to Plaintiff's prima facie case.

### 2. *Defendant did not Retaliate Against Plaintiff for Engaging in Protected Activity.*

In order for Plaintiff's retaliation claim based on her temporary assignments to survive summary judgment, Plaintiff must show: (1) that she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Guzman v. Brown Cty.*, 884 F.3d 633, 642 (7th Cir. 2018).

### a. <u>Plaintiff did not suffer an adverse employment action.</u>

Plaintiff's claim that she was involuntarily temporarily assigned in retaliation for engaging in protected activity fails because she cannot show that she suffered a materially adverse employment action. *McCurry v. Kenco*, 942 F.3d 783, 788 (7th Cir. 2019). A lateral transfer without a loss in benefits does not constitute an adverse employment action. *Place v. Abbott Lab., Inc.*, 215 F.3d 803, 810 (7th Cir. 2000); *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 645 (7th Cir. 2000); *Williams v. Bristol-Myers Squibb Co.*, 85 F,3d 270, 274 (7th Cir. 1996). It is not relevant whether the employee liked the position if he or she is shifted to essentially the same job. *Place*, 215 F.3d at 810; *Stutler v. Illinois Department of Corrections*, 263 F.3d 698, 703-4 (7th Cir. 2001).

Here, Plaintiff's pay did not change as a result of her voluntary temporary assignment to Human Resources or any of her subsequent temporary assignments. Def.'s SOF ¶ 20. She also continued to perform similar support staff functions in all of her assignments. *Id*. ¶¶ 11, 14, and 17. Therefore, no reasonable jury could conclude that any of Plaintiff's temporary assignments constituted an adverse action.

### b. <u>Plaintiff Cannot Show a Causal Connection Between her Protected Activity and her Transfers.</u>

Also fatal to her claim, Plaintiff cannot show a causal connection between her protected

activity and Defendant's decision to temporarily assign her. Plaintiff must show that "retaliation was the 'but for' reason" for her temporary assignments. *Rowlands v. United Parcel Service – Fort Wayne*, 901 F.3d 792, (7th Cir. 2018) (citation omitted). All of Plaintiff's temporary assignments were either made at her request or as a result of an operational need. Def.'s SOF ¶¶ 9-17. Plaintiff was chosen because she was the least senior employee in the job title of Administrative Assistant I. *Id*. ¶¶ 10, 13, 16, and 19. These significant intervening events and factors are "the elephant in the room" that cuts off any causal link between Plaintiff's protected activity and her temporary assignments, regardless of how close in time they occurred. *Davis v. Time Warner Cable of S.E. Wisc.*, 651 F.3d 664, 675 (7th Cir. 2011). There is no evidence to suggest that "but for" Plaintiff's protected activity, Defendant would not have temporarily assigned her. Simply put, Plaintiff was temporarily assigned because she requested the assignment or because she was the least senior employee in the job title of Adminsitrative Assistant I. Defendant's operational needs to assign an Administrative Assistant I had no relation to Plaintiff's protected activity.

**B. Summary Judgment Should be Entered on Plaintiff's Failure to Promote Claims.**

        **a.** ***Plaintiff was Not Discriminated Against Based Upon her Race or National Origin***.

To establish a failure to promote claim, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she was rejected; and (4) OCJ filled the position with someone outside the protected class who was not better qualified. *See McCurry*, 942 F.3d at 788-89 (citation omitted). Here, Plaintiff is unable to show that Defendant filled the positions at issue with employees who were not better qualified than her.

Plaintiff's claim for the Interstate Compact Coordinator ("ICC") position must fail because Defendant filled the position with another employee to settle a grievance brought by the Teamsters Local 700 union. Def.'s SOF ¶ 28. Plaintiff filled the position in this way as a legitimate means of

settling a dispute. *Id*. Here, the Court may accept the reasons proffered by Defendant and move on to consider whether Plaintiff has demonstrated these reasons were pre-textual. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). To demonstrate pretext, "a plaintiff must show more than that the employer's decision was incorrect, the plaintiff must also show the employer lied about its proffered explanation." *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998). Plaintiff cannot demonstrate these reasons are pre-textual. There is no evidence that Defendant lied about filing the ICC position to settle a grievance. Therefore, no reasonable jury could find that Defendant discriminated against Plaintiff to deny her the ICC position.

Plaintiff's claim for the Human Resources Assistant I position must fail because the selected candidate was better qualified than Plaintiff. *See McCurry*, 942 F.3d at 788-89 (citation omitted). Defendant hired ███████████████ because her qualifications were "outstanding." Def.'s SOF ¶ 26. In explaining why she chose ██████████, Larson cited the fact that she ██████ ████████████████████████████████████████████████████████████████████ ██████████████████. *Id*. ¶ 26. To survive summary judgment, Plaintiff must show that these stated reasons are lies. That Plaintiff considered this to be less valuable than her year and a half of experience at APD is of no consequence. *Robertson v. Department of Health Services*, 949 F.3d 371(7th Cir. 2020) ("An employee's 'own opinions about [her] . . . qualifications [do not] give rise to a material factual dispute.'" (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996) (alterations and ellipsis in original)). Plaintiff does not and cannot cite to any evidence that Defendant lied about its reasons for choosing ██████████ for the position. Thus, no reasonable jury could find that Plaintiff was clearly better qualified this position.

Likewise, Plaintiff's claim based upon the Administrative Assistant to the Chief Probation Officer position fails as a matter of law. Defendant hired ██████████ for the position because

she █████████████████████████████████████████████████████████

█████████████████████████████████████████████. Def.'s SOF ¶ 31. ██████████

took the same test as Plaintiff and was interviewed by the same people as Plaintiff. *Id*. ¶ 30. Once

again, Plaintiff does not and cannot cite to any evidence that Defendant lied about its reasons for

choosing ████████ for the position. Plaintiff's own assessments of her qualifications are not

sufficient to survive summary judgment and no reasonable jury could find that Plaintiff was clearly

better qualified for this position. *Robertson v. Department of Health Services*, 949 F.3d 371(7th

Cir. 2020).

Similarly, Plaintiff's claim for the Adult Probation Officer position fails because the

applicants who were hired were better qualified than Plaintiff according to Defendant's

preferences. Plaintiff interviewed for the Adult Probation Officer position twice. Def.'s SOF ¶¶ 32

and 33. These interviews were conducted by panels of 2 to 4 interviewers who scored candidates'

interviews on a scale of 1-5 in several categories and ultimately recommended to hire or not hire

the applicant. *Id*. ¶ 34. Defendant chose the applicants they hired because they all had

distinguishing factors in their qualifications such as relevant education (a master's degree), prior

relevant work experience (often as a probation, correctional, or peace officer), or language skills.

*Id*. ¶¶ 48-51 Plaintiff has a Bachelor's degree in Criminal Justice and does not have any experience

working as a probation or law enforcement officer. *Id*. ¶ 5. In fact, Plaintiff did not have a master's

degree, did not have relevant work experience, and did not have language skills. *Id*. ¶ 5. Plaintiff

also does not and cannot cite to any evidence that Defendant lied about its reasons for choosing

the applicants it hired.

Additionally, Plaintiff is unable to show that she was meeting her employer's legitimate

expectations at the time she interviewed for the Adult Probation Officer position in 2019. To

survive summary judgment, Plaintiff must show that he was meeting his employer's legitimate expectations at the time of the adverse employment action, which includes evidence that he did not violate Defendant's policies. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010). Courts look at the employee's "performance through the eyes of [her] supervisors." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008) (citation omitted). Plaintiff cannot meet her burden because she did not meet her supervisor's work expectations and failed to comply with OCJ policies.

Plaintiff was arrested for domestic battery on April 4, 2019 but failed to report this arrest to the Human Resources Office or anyone in her chain of command. Def.'s SOF ¶ 73. APD policy states that an employee must notify Human Resources or his or her chain of command as soon as practicable if arrested of a felony. Id. ¶ 59. Plaintiff was aware of the policy but still failed to comply by making a simple phone call at any time after her arrest. Id. ¶¶ 58 and 73. Through Plaintiff's own actions she failed to meet OCJ's legitimate job expectations at the time she interviewed for the Adult Probation Officer job in 2019. As a result, his discrimination claim for the 2019 Adult Probation Officer position fails as a matter of law.

### b. *Defendant did not Retaliate Against Plaintiff for Engaging in Protected Activity.*

Plaintiff's failure to promote claim must be dismissed because there is no causal connection between Plaintiff's protected activity and Defendant's decision to not hire her for any of the promotions at issue. "[T]o demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity." *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512-18 (7th Cir. 2021). "It is not sufficient that a decision-maker could have or even should have known about an employee's complaint." *Eaton v. J.H. Findorff & Sons, Inc.*, 1 F.4th 508, 513 (7th Cir.

2021)(citing *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009).

Plaintiff cannot show that the individuals who settled Teamsters Local 700's grievance by assigning the ICC position to another employee had any knowledge of Plaintiff's protected activity. Plaintiff cannot argue that Defendant's employees who would have been responsible for settling a grievance of this nature could have or even should have been aware of her protected activity. The lack of evidence that the decision-makers knew about Plaintiff's protected activity precludes her from raising a genuine issue of material fact in support of causation. *Eaton*, at 513. Summary judgment is therefore appropriate on this claim. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021).

The same reasoning applies to the Administrative Assistant to the Chief Probation Officer and Adult Probation Officer positions. Thomas Lyons interviewed Plaintiff for the Administrative Assistant to the Chief Probation Officer position. Lyons did not conduct an investigation into any of Plaintiff's complaints and Plaintiff presents no evidence that Lyons was aware of her protected activity. Only Lavone Haywood was involved in the interview and hire process for the Adult Probation Officer position and also aware of Plaintiff's protected activity. Def.'s SOF ¶¶ 52-54. However, Haywood never even considered Plaintiff's application because she was not recommended by the panel. *Id*. ¶ 47. The Chief Probation Officer in 2019, Thomas Lyons, was not aware of Plaintiff's protected activity and likewise did not consider her application because she was not recommended. *Id*. The lack of evidence that the decision-makers knew about Plaintiff's protected activity precludes her from raising a genuine issue of material fact in support of causation. *Eaton*, at 513. Summary judgment is therefore appropriate on this claim. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021).

Finally, Plaintiff cannot show a causal connection between her protected activity and Defendant's decision to not hire her for the Human Resources Assistant I position. Larson was aware of Plaintiff's complaint made in a letter to Chief of Probation Lavone Haywood and interviewed Plaintiff for this position after Plaintiff wrote this letter to Haywood. Def.'s SOF ¶¶ 24 and 52-54. However, timing alone is not enough to infer causation. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009). Here, Plaintiff is left with nothing but timing. She can not show that Larson was upset by her complaint. In fact, Larson thoroughly investigated Plaintiff's complaint, interviewing every witness Plaintiff suggested. Def.'s SOF ¶¶ 53-54. Plaintiff also cannot infer causation from Defendant's decision to hire Hill-Franklin for the position as she had a greater education background than Plaintiff and more relevant experience working in human resources. *Id*. ¶¶ 5 and 26. Accordingly, summary judgment should be granted on Plaintiff's retaliation claims.

For each of these reasons, Defendant respectfully requests that this Honorable Court grant its Motion for Summary Judgment and enter judgment in its favor and against Plaintiff, and for any other relief the Court deems reasonable and just.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

By: s/ Thomas Allen
THOMAS ALLEN
Assistant Attorney General
General Law Bureau
100 W. Randolph St., 13th Fl.
Chicago, Illinois 60601
thomas.allen@ilag.gov
(312) 814-3889

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 8, 2021, he electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.


*/s/ Thomas R. Allen*