**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARIA BURKHEAD,

        Plaintiff,

        v.

OFFICE OF THE CHIEF JUDGE OF
THE CIRCUIT COURT OF COOK
COUNTY,

        Defendant.

Case No. 19-cv-8193

Judge Martha M. Pacold

## MEMORANDUM OPINION AND ORDER

Plaintiff Maria Burkhead works for Defendant the Office of the Chief Judge of the Circuit Court of Cook County. Burkhead sued the Office of the Chief Judge and the Cook County Adult Probation Department under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging discrimination based on race or national origin, and retaliation for engaging in protected activity, including failure to promote based on racial discrimination and retaliation. On March 4, 2020, Burkhead voluntarily dismissed the Probation Department. The Office of the Chief Judge now moves for summary judgment on all claims. For the reasons below, the Office of the Chief Judge's motion for summary judgment is granted.

## BACKGROUND

### I. Factual Background

In deciding the Office of the Chief Judge's motion for summary judgment, the court views the evidence in the light most favorable to Burkhead. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are undisputed unless otherwise noted.

Burkhead is African-American and Hispanic. Pl.'s Resp. DSOF, [86] ¶ 2.[1] She has a bachelor's degree in criminal justice, and as of March 2, 2021 (the date of her deposition), she was working toward a master's degree in social work. *Id.* ¶ 5.

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph citations. Page numbers refer to the CM/ECF page number. Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "Pl.'s Resp. DSOF" for Burkhead's

In May 2015, the Office of the Chief Judge hired Burkhead as an Administrative Assistant I and assigned her to the Training Division of the Cook County Adult Probation Department.[2]  *Id.* ¶ 4.

According to Burkhead, on July 14, 2016, she complained in writing to several Adult Probation Department officials—Director of Training Delores Johnson, Chief Probation Officer Lavone Haywood, and Director of Human Resources Noreen Larson—that she had experienced workplace harassment, intimidation, and bullying by Senior Training Specialist Barbara O'Dell, and on July 22, 2016, she complained in writing to Johnson and Larson that she felt uncomfortable and that O'Dell was causing a hostile work environment.  Def.'s Resp. PSOF ¶¶ 35–36.[3]

On August 16, 2016, Burkhead was temporarily assigned to the Department of Human Resources.  Def.'s Resp. PSOF ¶ 1.  Burkhead claims she was transferred because she complained of harassment and difficulties with Johnson and O'Dell.  *See* Pl.'s Resp. DSOF ¶¶ 6–7, 9.[4]

On October 31, 2016, Burkhead was temporarily assigned to the Problem Solving Courts to help resolve a data entry backlog.  Pl.'s Resp. DSOF ¶¶ 11–12.

Shortly thereafter, on November 21, 2016, Burkhead sent a letter to Haywood, alleging that she experienced harassment, intimidation, verbal threats, bullying, racial discrimination, racial comments, and racial slurs from O'Dell.  *Id.* ¶ 52.  Haywood investigated these claims by meeting with Burkhead and Larson, and by interviewing witnesses from a list that Burkhead provided.  *Id.* ¶¶ 53–54.

---

Response to the Office of the Chief Judge of the Circuit Court of Cook County's Statement of Uncontested Facts, [86], and "Def.'s Resp. PSOF" for the Office of the Chief Judge's Response and Objections to Burkhead's Statement of Additional Material Facts, [95].  Both responses replicate the statements to which they respond, so for ease of reference the court cites the responses.

[2] The Office of the Chief Judge manages and operates the Cook County Adult Probation Department.  Pl.'s Resp. DSOF ¶ 3.

[3] The Office of the Chief Judge objects to these statements of fact by Burkhead as not complying with Local Rule 56.1(d)(2) in that the statements do not cite the specific page of the evidentiary material referenced in the statements.  Def.'s Resp. PSOF ¶¶ 35–36.  In this specific instance, the court was able to locate the cited documents in the record.  [87-3] at 130; [87-1] at 213–15.

[4] The Office of the Chief Judge disputes the reason for this temporary assignment, stating that Burkhead requested the transfer.  *Compare* Def.'s Resp. PSOF ¶ 1, *with* Pl.'s Resp. DSOF ¶ 9. However, as noted above, the court views this evidence in the light most favorable to Burkhead.  *Matsushita*, 475 U.S. at 587.

2

According to Burkhead, the investigation included one witness who corroborated some of the alleged events.[5]  *Id.* ¶ 54.

On December 7, 2016, Burkhead applied to be a Human Resources Assistant I.  *Id.* ¶ 23.  Burkhead interviewed for the position but was not hired.  *Id.* ¶¶ 24–25.  According to Larson and Assistant Director of Human Resources Michael Rohan, the candidate selected over Burkhead "attended law school and had experience as an administrative assistant working in human resources at a private corporation."  *Id.* ¶ 26.  Although Burkhead admits that Larson and Rohan gave this explanation during their depositions, she denies the veracity of the statement, pointing to the fact that the candidate attended law school only for a short time and had not made complaints of race discrimination.  *Id.*

On January 26, 2017, Burkhead applied for the Interstate Compact Coordinator (ICC) position.  *Id.* ¶ 27.  That position was ultimately given to another candidate as part of a settlement with the Teamsters Local 700 Union.  *Id.* ¶ 28.

Burkhead received a third temporary assignment on September 11, 2017.  Pl.'s Resp. DSOF ¶ 15.  This time, Burkhead was assigned to the Access Database for Specialty Courts, where she performed the duties of a PSI (Pre-Sentencing Investigation) Typist.  *Id.*

About two months later, on November 3, 2017, Burkhead sent a letter to two officials in the Office of the Chief Judge Human Resources Department, Human Resources Director Laura Kelly and Labor and Employment Relations Counsel Katherine Verrant.  Pl.'s Resp. DSOF ¶ 55.  In that letter, Burkhead made allegations of misconduct against O'Dell, Larson, and Haywood.  *Id.* ¶¶ 55–56.  Verrant investigated these allegations, but according to the Office of the Chief Judge, Verrant could not corroborate them.  *Id.*  According to Burkhead, some of the witnesses corroborated that O'Dell harassed and picked on Burkhead.  *Id.* ¶ 57.

The next year, on September 4, 2018, Burkhead applied to be the Administrative Assistant to the Chief Probation Officer.  *Id.* ¶ 29.  Burkhead interviewed for the position, but again she was not selected.  *Id.* ¶¶ 30–31.  According to the interviewer, the candidate hired for the position had the best score on the written test, the best interview performance, and a good recommendation.  *Id.* ¶ 31.  In other words, the job offer went to the individual the interviewer thought was the most qualified.  *Id.*  Burkhead contends that she was a more qualified candidate because she was working toward her master's degree, while the other candidate did not have a bachelor's degree.  *Id.*

---

[5] According to the Office of the Chief Judge, no witness corroborated Burkhead's allegations; instead, the witnesses described Burkhead as "the aggressor towards O'Dell."  Pl.'s Resp. DSOF ¶ 54.  Again, the court views the evidence in the light most favorable to Burkhead.

Burkhead also interviewed to be an Adult Probation Officer in 2017 (on February 24, 2017), and again more than two years later on November 19, 2019. Pl.'s Resp. DSOF ¶¶ 32–33. In 2017, Burkhead was interviewed by a four-person panel. *Id.* ¶ 37. Of the four interviewers, one recommended her for hire, one did not recommend her for hire, and two made no recommendation. *Id.* ¶ 38. In 2019, Burkhead interviewed with a two-person panel. *Id.* ¶ 43. This time, one interviewer did not recommend her for hire and the other did not make a recommendation. *Id.* ¶ 44. According to the Office of the Chief Judge, all 18 candidates hired as Adult Probation Officers in 2018 and 2019 had distinguishing factors such as a master's degree, prior work experience in the field, or language skills. *Id.* ¶ 48. Burkhead contests this explanation, citing her prior work experience and relevant education. *Id.*

Finally, sometime in either 2018 or 2019, Burkhead was temporarily moved to the Community Service Unit. Pl.'s Resp. DSOF ¶ 18; Def.'s Resp. PSOF ¶¶ 10–12. Burkhead states that this move was a temporary transfer, not a temporary assignment. Pl.'s Resp. DSOF ¶ 18. The Office of the Chief Judge, on the other hand, describes the move as a temporary assignment. *Id.*

For each temporary assignment, the Office of the Chief Judge asserts that Burkhead was the least senior available Administrative Assistant I at the time. *Id.* ¶¶ 10, 13, 16, 19. Burkhead contests this fact and the significance of the Office of the Chief Judge's seniority lists. *Id.*

It is undisputed that Burkhead's pay did not change as a result of the temporary assignments. *Id.* ¶ 20. However, Burkhead contends that she did not receive a possible salary increase when she was transferred to the Community Service Unit. *Id.*

## II.  Procedural History

On October 19, 2016, Burkhead filed an employment discrimination charge with the Equal Employment Opportunity Commission (EEOC), alleging discrimination and retaliation against the Cook County Adult Probation Department. *Id.* ¶ 75. The charge alleged that the Probation Department discriminated against Burkhead "by subjecting her to different terms and conditions of employment, including a hostile work environment." *Id.* ¶ 76.

About two years later, Burkhead filed a second employment discrimination charge with the EEOC, again alleging discrimination and retaliation against the Probation Department. *Id.* ¶ 77. This second charge claimed that the Probation Department discriminated against Burkhead by involuntarily transferring her, by refusing to promote her, and by making her "endure discriminatory comments and

racist Facebook posts." *Id.* ¶ 78. Burkhead further alleged that she had "not been promoted" and was "involuntarily transferred due to illegal retaliation." *Id.*

Burkhead filed this lawsuit against the Office of the Chief Judge and the Probation Department on December 16, 2019. [1]. The complaint asserts two claims under Title VII. First, Burkhead alleges that she "was subjected to disparate treatment based upon her race and/or national origin, and she was denied promotions because of her race and/or national origin, and she was denied promotional opportunities on grounds and terms that were not applied to non-African American and/or non-Hispanic employees." *Id.* ¶ 35. Second, she alleges that defendants engaged in "acts of retaliation" by involuntarily transferring her to various temporary assignments and denying her applications for promotions. *Id.* ¶ 53.

It is undisputed that Burkhead "filed a charge of discrimination with the EEOC, received a right-to-sue letter from the EEOC, and brought this lawsuit within the applicable time period." [8] at 2.

On March 4, 2020, the court granted Burkhead's oral motion to voluntarily dismiss Defendant Cook County Adult Probation Department. [14]. The Office of the Chief Judge (the only remaining defendant) now moves for summary judgment on both of Burkhead's claims. [62].

## DISCUSSION

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation and footnote omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [the non-moving party's] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## I.    Discrimination Claim

The court first considers Burkhead's claim that the Office of the Chief Judge discriminated against her based on her race and national origin.  [1] ¶¶ 33–42.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  When a defendant moves for summary judgment in a Title VII discrimination case, "the 'singular question' for the district court is whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'"  *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)).

"One way of proving employment discrimination under Title VII remains the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)."  *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021).  Under that approach, a plaintiff must make "a prima facie case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was pretext."  *Id.* (quoting *Purtue*, 963 F.3d at 601–02).  To make a prima facie case, "a plaintiff must show: (1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer."  *Id.* (citing *Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789, 791–92 (7th Cir. 2020)).

The Office of the Chief Judge does not contest that Burkhead belongs to a protected class or that she met her employer's legitimate expectations.  Instead, it argues only that Burkhead did not suffer an adverse employment action and that she cannot identify a similarly situated employee who was treated more favorably. The court considers each of these arguments in turn.

### A.    Adverse Employment Actions

Under the *McDonnell Douglas* framework, Burkhead must show that she suffered an adverse employment action.

"For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits."  *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) (quoting *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000)).  In other words, "not everything that

makes an employee unhappy is an actionable adverse action." *Id.* (quoting *Bell*, 232 F.3d at 555). For example, "'[p]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable' under Title VII." *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Under Seventh Circuit caselaw, "challenged actions involving the reassignment of job responsibilities are typically not materially adverse unless there is a '*significant* alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation, or career prospects.'" *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 382 (7th Cir. 2020) (emphasis in original) (quoting *Stephens v. Erickson*, 569 F.3d 779, 791 (7th Cir. 2009)). The Seventh Circuit has noted that

> materially adverse employment action can be categorized into three groups of cases involving: (1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting her to "humiliating, degrading, unsafe, and unhealthy, or otherwise significant negative alteration in [her] work place environment."

*Lewis*, 496 F.3d at 653 (alteration in original) (quoting *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744–45 (7th Cir. 2002)). The court considers "each case from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Robertson*, 949 F.3d at 382 (quoting *Burlington N.*, 548 U.S. at 71) (internal quotation marks omitted).

Burkhead argues that she suffered a materially adverse employment action that can be categorized in any of the three groups considered by the Seventh Circuit. First, Burkhead contends that a "jury could reasonably find . . . [p]laintiff's failure to have a permanent position for over five years to be humiliating, degrading and a significant alteration in [her] work environment." [84] at 8. This argument is not persuasive. As the Office of the Chief Judge points out, Burkhead did in fact hold a permanent position as an Administrative Assistant I. [94] at 4. Although Burkhead was temporarily assigned to other positions, she nevertheless maintained a permanent position. Each temporary assignment also involved administrative work consistent with her permanent position. *Id.* Burkhead has not provided any evidence that her temporary assignments were humiliating, degrading, or a significant alteration in her work environment. As the Seventh Circuit has explained, "[s]ome people thinking an action is 'humiliating' is not enough, on its own, to raise the action to the level of an adverse employment action." *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 471 (7th Cir. 2018); *see also Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (holding that the

public's perception of plaintiff's reassignment as a "nudge toward[] retirement" did not make the reassignment an adverse employment action). It is not enough to simply assert that a prolonged temporary assignment constitutes humiliation.

Second, Burkhead claims that her compensation (or current wealth) diminished due to the temporary assignments. In particular, Burkhead highlights her assignment to the Community Service Unit, "which would have required a salary increase if she obtained the position permanently." [84] at 8. This argument is also unpersuasive. As stated above, it is undisputed that Burkhead's pay did not change because of the temporary assignments. Pl.'s Resp. DSOF ¶ 20. Burkhead argues that under the collective bargaining agreement, her "transfer to Community Service Clerk was subject to a salary increase which she did not receive." *Id.* However, as the Office of the Chief Judge points out, the section of the collective bargaining agreement on which Burkhead relies applies only when an employee is transferred to a "higher rated job." [66-23] at 97–98 (CBA effective December 1, 2017, Article XIII, Section 7, at p. 32–33); *see* [94] at 4. But here, Burkhead was transferred between two positions (Community Service Coordinator and Training Secretary) of the same grade. [87-1] at 203; [87-4] at 5. Burkhead's compensation therefore was not diminished because of any temporary assignments or transfers.

Finally, Burkhead argues that her temporary assignments "significantly reduced her career prospects because she has been deprived of a stable job and instead has been transferred to new assignments repeatedly." [84] at 8. To be sure, even "[a] nominally lateral transfer" can be an adverse employment action if it "significantly reduces the employee's career prospects by preventing her from using her skills and experience." *Madlock*, 885 F.3d at 471 (quoting *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012)) (internal quotation marks omitted). "So can isolation or a similar 'alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet.'" *Id.* (quoting *Herrnreiter*, 315 F.3d at 744). But here, as in *Madlock*, Burkhead's temporary assignments did not involve the permanent diminishment of responsibilities. *See id.* ("The temporary loss of a leadership role does not constitute an adverse action."). Further, each position involved the same types of administrative duties and responsibilities as those entailed in Burkhead's permanent position. Burkhead was therefore able to use her skills and experience, and she did not suffer a significant reduction in her career prospects.

In short, Burkhead continued to hold the same job, the same salary, and perform the same type of administrative work. She was not deprived of a higher salary, because her Training Secretary position and Community Service Coordinator position were both grade 12 positions. As the Seventh Circuit held, "[a] transfer involving no reduction in pay and no more than a minor change in working conditions will not do." *Madlock*, 885 F.3d at 470 (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)). Construing the facts in Burkhead's favor, a reasonable factfinder could not conclude that there was an

adverse employment action. The Office of the Chief Judge has demonstrated that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. This alone is a sufficient basis upon which to grant the Office of the Chief Judge's motion for summary judgment on the discrimination claim.

## B. Similarly Situated Employees

"Under the *McDonnell Douglas* framework, the fourth element of a *prima facie* case requires that the plaintiff show he was treated less favorably than a similarly situated employee outside his protected class." *Reives v. Ill. State Police*, 29 F.4th 887, 892 (7th Cir. 2022) (citation omitted). The Office of the Chief Judge argues that even if Burkhead suffered an adverse employment action, she cannot show that she was treated less favorably than similarly situated employees.

"Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quotations omitted). This "flexible, common-sense, and factual" inquiry considers "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225–26 (7th Cir. 2017) (citations omitted). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Johnson*, 892 F.3d at 895.

Burkhead argues that the Office of the Chief Judge treated similarly situated employees more favorably because Larson testified that she never considered other individuals for Burkhead's temporary assignments (and transfer). [84] at 7. The reasonable inference, Burkhead argues, is that "all non-African American and/or non-Hispanic individuals in the support staff union have not been involuntarily transferred at the rate [Burkhead] has and thus have been treated more fairly." *Id.* Burkhead does not, however, identify any employee who could serve as a comparator. Thus, Burkhead has not pointed to evidence that another employee was similarly situated and "has no evidence from which a reasonable fact finder could conclude that the plaintiff met [the plaintiff's] burden on this issue." *Johnson*, 892 F.3d at 895.

Burkhead cannot establish a prima facie case of race or national origin discrimination under the *McDonnell Douglas* framework because she fails to provide evidence sufficient to satisfy the fourth element. This too is a sufficient basis upon which to grant the Office of the Chief Judge's motion for summary judgment on the discrimination claim.

\*　　　\*　　　\*

For the reasons discussed above, Burkhead has not made a prima facie case of discrimination under the Title VII. The court need not consider whether the Office of the Chief Judge's actions were pretextual. The Office of the Chief Judge's motion for summary judgment on Burkhead's discrimination claim is granted.

## II.　Retaliation Claim

Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a).

To defeat summary judgment on a Title VII retaliation claim, Burkhead "must offer evidence from which a reasonable jury could find: '(1) [she] engaged in an activity protected by the statute; (2) [she] suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action.'" *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)). The court's inquiry turns on the question: "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Igasaki*, 988 F.3d at 959 (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)).

Here, the Office of the Chief Judge does not contest that Burkhead engaged in a statutorily protected activity by filing employment discrimination charges with the EEOC. The court's analysis therefore focuses on the requirements for a materially adverse action and causation.

### A.　Adverse Employment Actions

For a Title VII retaliation claim, "a materially adverse action is defined as an action 'that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.'" *Lesiv*, 39 F.4th at 911–12 (quoting *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016)). A materially adverse action "must rise above 'trivial harms,' such as 'petty slights or minor annoyances that often take place at work and that all employees experience,' which do not qualify as materially adverse." *Id.* at 912 (quoting *Burlington N.*, 548 U.S. at 68). When evaluating a job transfer as an adverse employment action, "[t]he fact that [an employee] received the same pay and benefits and held the same title in her new position does not necessarily preclude her retaliation claim." *Place v. Abbott Lab'ys*, 215 F.3d 803, 810 (7th Cir. 2000). But "being shifted to an essentially equivalent job that [the employee] did not

happen to like as much does not a Title VII claim create." *Id.* (citing *Williams*, 85 F.3d at 274).

Burkhead argues that she suffered an adverse employment action when she was temporarily assigned to the Specialty Courts for a position with a lower pay grade. [84] at 8. She further contends that she suffered a materially adverse action when she followed her collective bargaining agreement and "sought a lateral transfer to the position of Community Service Coordinator." *Id.* According to Burkhead, she was initially selected for the transfer, but then had her selection rescinded the next day. *Id.* She was then transferred to the Community Service Coordinator position but was not given a permanent position or higher salary. *Id.*

According to the Office of the Chief Judge, Burkhead's temporary job assignments were made "pursuant to a bona fide seniority system." [94] at 8. The Office of the Chief Judge further argues that it is irrelevant whether Burkhead was assigned to a job with a lower pay grade because her pay did not decrease at the Specialty Courts. [94] at 9; *see* Pl.'s Resp. DSOF ¶ 20. Finally, the Office of the Chief Judge also argues that Burkhead was transferred between two positions (Community Service Coordinator and Training Secretary) of the same pay grade. Def.'s Resp. PSOF ¶ 11; [94] at 4, 9–10; [87-1] at 200, 203 (Training Secretary); [87-4] at 5, 13 (Community Service Coordinator); Pl.'s Resp. DSOF ¶¶ 4–8, 17–18.

Here, the court's reasoning is substantially similar to its reasoning as to the discrimination claim. As the Office of the Chief Judge argues, it is undisputed that Burkhead's salary was not decreased because of any temporary assignment or transfer. Pl.'s Resp. DSOF ¶ 20. Burkhead also held a permanent position throughout her temporary assignments, and she had similar administrative duties and responsibilities at each temporary position. Finally, the mere assertion that Burkhead was deprived of an opportunity to receive higher pay by not being permanently hired as a Community Service Coordinator is speculative and insufficient to create an issue of fact when the Office of the Chief Judge has cited record evidence that the two positions have the same pay grade. Def.'s Resp. PSOF ¶ 11.

For these reasons, a reasonable fact finder could not conclude that Burkhead suffered materially adverse employment actions. Burkhead has therefore not made a prima facie case for retaliation under Title VII. On this ground alone, the Office of the Chief Judge's motion for summary judgment on the retaliation claim is granted.

### B. Causal Link

The court next considers whether a reasonable jury could find a causal link between Burkhead's complaints of harassment and discrimination and her temporary reassignments or transfers.

Under Title VII, retaliation claims require "traditional but-for causation, not a lesser 'motivating factor' standard of causation." *Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) (quoting *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir. 2013)). "The requirement of but-for causation in retaliation claims does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–48 (2013)). In this context, "causation can be established by circumstantial evidence, which includes, for example, 'suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently.'" *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (quoting *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016)). A plaintiff may also "point to any 'other evidence from which an inference of discriminatory intent might be drawn.'" *Id.* (quoting *Gracia*, 842 F.3d at 1015).

"For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, [the Seventh Circuit] typically allow[s] no more than a few days to elapse between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). But the court also has not established a "bright-line timing rule . . . to decide whether a retaliation claim is plausible or whether it should go to a jury." *Carlson*, 758 F.3d at 829. Nevertheless, "[u]nder most circumstances, suspicious timing alone does not create a triable issue on causation." *Hnin*, 751 F.3d at 508 (citation omitted). "When suspicious timing alone is insufficient to carry the plaintiff's burden, a plaintiff may 'survive summary judgment if there is other evidence that supports the inference of a causal link.'" *Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019) (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005)).

Burkhead claims there was a causal link between her complaints of harassment and discrimination and her initial temporary reassignment. Specifically, Burkhead argues that the short time frame between her complaints of harassment and discrimination on July 19 and 22, 2016, and her temporary reassignment to Human Resources on August 16, 2016 "supports an inference of retaliatory motive." [84] at 10. According to Burkhead, the Office of the Chief Judge admitted that this transfer was because of the complaints and difficulties with O'Dell and Johnson, and that the Office of the Chief Judge deviated from standard practice by not returning her to her position as Training Clerk. *Id.* Further, Burkhead argues that any explanation that her reassignments were based on a seniority system are pretextual. *Id.* at 11.

At the outset, the court notes that there is a factual dispute as to whether Burkhead's first temporary assignment was the result of her request. But as previously discussed, the court gives the benefit of all reasonable inferences to

Burkhead at this stage of litigation. This argument therefore does not establish the lack of a causal link.

Nevertheless, Burkhead's retaliation claim does not provide sufficient evidence to support a causal inference. At bottom, Burkhead's claim relies almost entirely on suspicious timing, pointing to the one-month gap between Burkhead's complaints and her temporary reassignment. Even though Burkhead asserts that these reassignments are a deviation from standard practice and that the Office of the Chief Judge admitted causation, she provides no supporting evidence. Although the court draws all reasonable inferences in the non-moving party's favor, "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Hnin*, 751 F.3d at 508 (quoting *Herzog v. Graphic Packaging Int'l Inc.*, 742 F.3d 802, 806 (7th Cir. 2014)).

Suspicious timing by itself rarely creates a triable issue. *Id.* And when suspicious timing is sufficient to constitute a triable issue, the Seventh Circuit typically allows no more than a few days to elapse between the protected activity and the adverse action. *Kidwell*, 679 F.3d at 966. Here, about a month passed between the complaints Burkhead alleges and the initial temporary reassignment. Def.'s Resp. PSOF ¶¶ 1, 35–36. Without more evidence to support her claim of retaliation, there is no triable issue. The Office of the Chief Judge's motion for summary judgment on this claim is granted on this independent ground.

\*      \*      \*

For these reasons, the record does not contain "sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge." *Igasaki*, 988 F.3d at 959 (quoting *Lord*, 839 F.3d at 563). The court thus need not also consider whether the Office of the Chief Judge's actions were pretextual. The Office of the Chief Judge's motion for summary judgment on Burkhead's retaliation claim is granted.

## III.    Failure-to-Promote Claim

Finally, Burkhead asserts a claim for failure to promote based on racial discrimination and retaliation.

To prove this claim, Burkhead must show: "(1) she was a member of a protected class; (2) she was qualified for the position she sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who wasn't better qualified." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788–89 (7th Cir. 2019) (citation omitted). "If there is sufficient evidence from which a jury could find a prima facie case of discrimination, the burden shifts to the defendants to produce evidence of a legitimate, nondiscriminatory reason for hiring" the other candidate. *Barnes v. Bd. of Trs.*

*of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020) (citation omitted).  The burden then shifts back to the plaintiff to produce evidence that the defendant's proffered reason was pretextual.  *Id.*  "Because the prima facie and pretext inquiry often overlap, if a defendant offers a nondiscriminatory reason for its actions, [the court] can proceed directly to the pretext inquiry."  *Id.*  "Summary judgment for the employer is appropriate if the employee fails to establish any of the elements of a *prima facie* case for failure to promote."  *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016) (citation omitted).

Here, the record does not contain evidence that the Office of the Chief Judge promoted individuals outside of the protected class who were less qualified than Burkhead.  *See Lloyd v. Mayor of City of Peru*, 761 F. App'x 608, 610 (7th Cir. 2019).  Each of the candidates promoted over Burkhead had at least comparable qualifications.  For example, the candidate selected for the Human Resources Assistant I position attended law school (at least for some time) and had "experience as an administrative assistant working in human resources at a private corporation."  Pl.'s Resp. DSOF ¶ 26.  Similarly, the candidate selected for the Administrative Assistant to the Chief Probation Officer position had the best score on the written test, the best interview performance, and a good recommendation.  *Id.* ¶ 31.  In other words, that job offer went to the individual believed to be the most qualified.  *Id.*  Additionally, the Office of the Chief Judge has articulated distinguishing qualifications for each of the candidates selected for the Adult Probation Officer positions, such as a master's degree, prior work experience in the field, or language skills.  *See id.* ¶¶ 48–50.  Finally, the candidate selected for the ICC position received the promotion as part of a settlement agreement with the Teamsters Local 700 Union.  *Id.* ¶¶ 27–28.

In response to these qualifications and circumstances, Burkhead cites her own work experience and relevant education.  *See id.* ¶¶ 48–50.  Specifically, Burkhead points to the fact that she was working towards a master's degree during some of these application periods.  *Id.*  But importantly, "[a]n employee's 'own opinions about [her] . . . qualifications [do not] give rise to a material factual dispute."  *Robertson*, 949 F.3d at 381 (alterations in original) (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996)).  In fact, unless the competing qualifications "are so favorable to the plaintiff that there can be *no dispute* among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue,' the plaintiff's qualifications alone do not establish evidence of pretext."  *Id.* (emphasis in original) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002)).

Burkhead also generally asserts that her employer made statements indicating hiring decisions based on racial discrimination or retaliation, but she points to no evidence in the record to support these claims.  *See, e.g.*, [1] ¶¶ 13–15.

14

Burkhead therefore has not provided sufficient evidence to establish a prima facie case of failure to promote. Further, she has not provided a sufficient basis on which to conclude that the Office of the Chief Judge's explanations are pretextual. The Office of the Chief Judge's motion for summary judgment on the failure-to-promote claim is granted.

## CONCLUSION

Defendant's motion for summary judgment [62] is granted. Enter final judgment. Civil case terminated.

Date: March 31, 2024                    /s/ Martha M. Pacold